COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, O'Brien and Senior Judge Frank
Argued by teleconference

FOOD LION, LLC AND
  DELHAIZE AMERICA, LLC

                                                    MEMORANDUM OPINION[*] BY
v.        Record No.  1507-19-1                          JUDGE GLEN A. HUFF
                                                         APRIL 14, 2020
JOYCE TOEHLKE


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Steven H. Theisen (Midkiff, Muncie & Ross, P.C., on brief), for
            appellants.

            Philip J. Geib (Philip J. Geib, P.C., on brief), for appellee.


        Food Lion, LLC and Delhaize America, LLC ("employer") appeal an award for worker's

compensation benefits to Joyce Toehlke ("claimant") by the Virginia Workers' Compensation

Commission.  Employer raises four assignments of error.  First, employer contends that the

Commission erred by finding claimant provided timely notice of the alleged accident.  Second,

employer claims the Commission's finding that claimant sustained an injury by accident was

error because claimant failed to prove the accident actually occurred.  Third, employer claims the

Commission erred by finding claimant's injury and medical treatment were caused by the alleged

accident.  Finally, employer claims the Commission erred by awarding continuing total

temporary disability benefits because claimant failed to establish her disability was permanent or

ongoing.  Because there is credible evidence in the record supporting each of the Commission's

findings, this Court affirms.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"Under settled principles of appellate review, we consider the evidence in the light most favorable to [claimant] as the prevailing party before the commission." Layne v. Crist Elec. Contractor, Inc., 64 Va. App. 342, 345 (2015). So viewed, the evidence shows that claimant began working at Food Lion as a specialty merchandise associate in January 2014. On or about December 1, 2014,[1] claimant was standing on a step stool around seven feet in the air while reaching overhead to retrieve a tote filled with merchandise. The tote was heavier than she anticipated, causing her to fall off the step stool. She testified: "I just remember my arms and everything jolting, and my left knee hit the concrete and my right foot was still kind of tangled up in the stepstool."

Soon after, claimant reported the accident to her supervisor, assistant store manager Sharon Halligan. Claimant did not remember if she reported it to Halligan on the same day or a couple of days later. Claimant told Halligan that she had fallen off the step stool and that her hips, lower back, neck, and knee were hurting as a result. She told Halligan she planned to go to her hip doctor since she had a pre-existing hip problem and didn't know if she was experiencing back pain or hip pain. Halligan recalled speaking to claimant about the accident around that same time. According to Halligan, she followed protocol and completed an accident report shortly after claimant told her about the accident.

Claimant sought treatment from Dr. Campbell, her hip doctor, on December 8, 2014. However, an insurance issue prevented her from being seen then. While at Dr. Campbell's office, claimant completed a patient information form where she listed that the injury had occurred "months ago." When asked whether the injury was work related, she wrote, "pre-existing/work has made it worse." She also completed a new ailment report while at Dr. Campbell's office. She

---

[1] Claimant is not sure the exact date the incident occurred. She testified that it happened a few days before or after December 1, 2014. Hereinafter, it will be referred to as the "December 1, 2014 accident."

described her symptoms as "left lower back pain, hip also feels weak, hurts and goes down my leg and foot, numbness and needles, cramping bad/worse when I stand or walk." She wrote that her symptoms first appeared "months ago" and that it "just keeps getting worse."

On December 15, 2014, claimant had an appointment with Dr. Goldberg, a neurologist whom she saw regularly for neck pain, migraines, and occasional low back pain. No mention is made of the December 1, 2014 accident in Dr. Goldberg's report. According to claimant, however, she told Dr. Goldberg about the accident during the visit. He later diagnosed her with "lumbosacral radiculopathy with recurrent symptomatology or primary left hip issue . . . ." Dr. Goldberg recommended that claimant find a job that did not require lifting. A couple of weeks later, claimant resigned from Food Lion. She then worked at Tidewater Fleet Supply for approximately one and a half years, earning a higher wage than she did at Food Lion.

On March 19, 2015, claimant was treated by Dr. Campbell. His office notes reflect that she complained of left hip pain that was sudden onset after an "injury which occurred around 11/2014 while climbing down a ladder carrying a heavy tote, she reports her leg gave way when she stepped off the ladder." Later, Dr. Goldberg referred claimant to Dr. Levi, a physiatrist, for pain management. On July 9, 2015, Dr. Levi's physician's assistant noted that claimant complained of eight months of "left side dominate low back pain" that was acute onset "after she was lifting a heavy tote and fell forward." The physician's assistant further noted that "in November, she was lifting a heavy tote off of a shelf that was above her head. She fell forward. Patient developed left side dominant lower back pain and paresthesia in the left leg. She also notes re[-]aggravation of her left groin pain."

Dr. Levi referred claimant to Dr. Laurent, a back surgeon. At some point, claimant called her former Food Lion supervisor, Halligan, and informed Halligan about her scheduled surgery, mentioning that she believed the injuries were related to the December 1, 2014 accident at Food

Lion. Dr. Laurent performed surgery on claimant's back on January 19, 2016, from which claimant suffered vascular complications. On April 16, 2016, Dr. Laurent completed a questionnaire where he stated that claimant's lumbar radiculopathy and subsequent surgery was proximately related to her work accident. In his August 30, 2016 letter, Dr. Laurent continued to causally relate claimant's injury and disability to the work accident. He considered the inconsistencies in the records and stated that the signs of a back injury will often manifest themselves initially as a hip injury, explaining why claimant originally thought her pain could be from her pre-existing hip injury. He also stated that "if the conditions of Ms. Toehlke's spine had been present prior to December 1, 2014, this patient would have likely exhibited significant difficulties and clinical complaints of a profound nature."

Claimant continued to have difficulties after the surgery. She required a walker to ambulate and had "significant limitation" on "how long she can stand and walk." On June 1, 2016, Dr. Laurent restricted claimant from performing any duty and stated "patient will not be returning to work." A month later he noted that claimant had tried to return to work but could not "tolerate the long sitting" required, and he stated that "I do not think it would be a good idea for her to return to work as she is unable to tolerate what is required at that job and to be honest I cannot think of a position right now, which she would be suited for with her current disabilities." Moreover, in a November 30, 2016 report, Dr. Laurent opined that claimant "is likely to have a level of permanent disability." She continued to see Dr. Laurent and began treating with Dr. Gershon to manage her pain. In June of 2017, claimant had "been stable over the past 6 months," but was still using a walker for ambulation." A year later, in June of 2018, Dr. Gershon noted that claimant continued on "No Duty" "Per Dr. Laurent."

- 4 -

Claimant filed multiple Virginia Workers' Compensation claims, beginning on January 7, 2016.[2] She alleged injuries to her lower back, left hip, and cervical spine/neck because of the December 1, 2014 accident. The insurance adjuster for employer first became aware of the accident on December 11, 2015.

At the hearings, claimant withdrew her claims related to her left hip and cervical spine/neck. In an opinion issued on September 17, 2018, Deputy Commissioner Wilder denied the remaining claims, finding she had not proved she sustained a compensable injury by accident or that she provided timely notice of her injury. The deputy commissioner based this finding on the lack of documentation mentioning the incident in any of claimant's medical records prior to March 9, 2015, and the lack of evidence that employer was made aware of the incident within a reasonable time.

Claimant requested review of the decision, and the full Commission reversed in a January 28, 2019 opinion, remanding the case to address claimant's wage loss claim and employer's remaining defenses. The full Commission found that claimant's testimony, along with the testimony of her former supervisor Sherry Halligan, proved by a preponderance of the evidence that claimant had given employer notice of the accident within thirty days, making it timely. On remand, Deputy Commissioner Wilder found that claimant had proven she sustained injuries to her lower back and left hip in the December 1, 2014 accident and entered a medical award. The deputy commissioner also found that claimant proved entitlement to temporary total disability benefits for December 23, 2014 through January 1, 2015; January 19, 2016 through March 6, 2016; and beginning June 1, 2016.

On May 15, 2019, the employer requested review of Deputy Commissioner Wilder's decision. In its August 21, 2019 opinion, the full Commission declined to reconsider the findings

_____

[2] Claimant filed claims dated January 7, 2016, March 22, 2016, March 23, 2016, May 26, 2016, June 21, 2016, June 23, 2016, August 11, 2016, and December 9, 2016.

that claimant had provided timely notice and sustained a compensable injury. However, it reversed the finding regarding an injury sustained to the left hip and the subsequent medical award, since that claim had been withdrawn previously and was not properly before the deputy commissioner. It also modified the award of disability benefits, overturning the award for December 23, 2014 through January 1, 2015, thus limiting the total disability benefits to the periods of January 19, 2016 through March 6, 2016, and from June 1, 2016, until conditions justify a modification thereof. This appeal followed.

## II. STANDARD OF REVIEW

This Court views the evidence "in the light most favorable to the prevailing party before the commission." Clifton v. Clifton Cable Contr., LLC, 54 Va. App. 532, 536 (2009). This Court is "bound by the commission's factual findings supported by credible evidence, despite the fact that there may be evidence to support a contrary finding." Hoffman v. Carter, 50 Va. App. 199, 209 (2007). "In determining whether credible evidence exists, [this C]ourt does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991). "The scope of a judicial review of the fact finding function of a workers' compensation commission, therefore, is severely limited, partly in deference to the agency's expertise in a specialized field." Southside Virginia Training Ctr. v. Ellis, 33 Va. App. 824, 828 (2000) (quoting Georgia-Pacific Corp. v. Robinson, 32 Va. App. 1, 4 (2000)).

## III. ANALYSIS

Employer makes four arguments attacking the evidence in support of the Commission's findings. First, it argues that claimant failed to establish she provided timely notice to the employer of her accident. Second, it argues claimant failed to establish that she suffered an injury by accident because she did not establish that the accident occurred. Third, employer

argues the evidence does not support the Commission's finding that the accident caused claimant's injuries. Finally, it argues that even if claimant established her entitlement to some compensation, the Commission erred because there was insufficient evidence of an ongoing injury to warrant continuing compensation. Because credible evidence supports each of the Commission's findings, this Court affirms.

## A. Notice

Code § 65.2-600 requires an employee to provide notice within thirty days after the occurrence of an accident. "However, if a reasonable excuse is made to the satisfaction of the commission, and the commission is satisfied that the employer has not been prejudiced, compensation may be paid even if notice is not timely given." Westmoreland Coal Co. v. Coffey, 13 Va. App. 446, 448 (1991). "Written notice is unnecessary if the employer has actual notice through a foreman or other superior officer." Goodyear Tire v. Rubber Co. v. Harris, 35 Va. App. 162, 171 (2001). "The notice must include the name and address of the employee, the time and place of the accident, and the nature and cause of the accident and the injury." Code § 65.2-600(B).

Claimant testified that she notified her supervisor of the accident and injury within a couple of days of the December 1, 2014 occurrence, although she could not remember the exact date. Claimant explained to her supervisor how she fell in the store and the pains she was subsequently experiencing in her hips, neck, and knee. Claimant's supervisor, Halligan, also recalled the claimant telling her about falling from the step stool while retrieving the tote. Employer argues that timely notice was not given because claimant never testified to the exact date she reported the accident and because it was not reported to employer's insurance carrier until December 11, 2015.

The testimony of claimant and her supervisor provided credible evidence to support the Commission's finding that timely notice was given to employer. Claimant's testimony that she reported the accident within a couple of days is credible evidence that it was reported within the thirty-day requirement. Halligan's assertion that she remembered speaking to claimant about the accident and filed an incident report shortly after is also credible evidence that notice was given. Although the insurance carrier did not receive notice of the accident until December 11, 2015, the employee is only required to provide notice to her employer. The claimant cannot be penalized for the employer's failure to report the accident to its insurance carrier. Solid Gold Corp. v. Wang, 18 Va. App. 66, 69 (1994).

B. Injury by Accident

Employer argues the Commission erred because claimant failed to prove she suffered an injury by accident. Claimant must prove an injury by accident by establishing "(1) an identifiable incident; (2) that occurs at some reasonably definite time; (3) an obvious sudden mechanical or structural change in the body; and (4) a causal connection between the incident and bodily change." Alexandria City Pub. Sch. v. Handel, 70 Va. App. 349, 354-55 (2019) (quoting Hoffman, 50 Va. App. at 212). "The commission's determination of whether a claimant suffered 'an "injury by accident" presents a mixed question of law and fact, because it involves both factual findings and the application of law to those facts. The Commission's factual findings bind this Court as long as credible evidence supports them.'" Riverside Regional Jail Authority v. Dugger, 68 Va. App. 32, 37 (2017) (quoting Van Buren v. Augusta Cty., 66 Va. App. 441, 446 (2016)). "In determining whether credible evidence exists, [this C]ourt does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Handel, 70 Va. App. at 354 (quoting Wagner Enters., 12 Va. App. at 894).

Employer does not challenge the evidence regarding any specific criteria for establishing an injury by accident. Rather, employer argues that claimant failed to establish any of the elements because she failed to prove that the accident actually occurred. It argues that claimant's testimony about the accident is inherently incredible because none of the medical records mention the accident for several months after it allegedly occurred. It claims that it is unbelievable that she would have known about the accident and failed to mention it several times to physicians treating her shortly after the accident.

Employer relies on Walter Reed Convalescent Ctr./Virginia Health Servs. v. Reese, 24 Va. App. 328 (1997), to argue that claimant's testimony is insufficient to support the Commission's finding that the accident occurred. See id. at 336 ("Based upon our review of the record, we find claimant's testimony inherently incredible and inconsistent with the medical records, the counselling forms, and [the claimant's supervisor]'s testimony. Absent claimant's testimony, no evidence established that the duties of the ward clerk job, as amended, fell outside of claimant's residual capacity."). It argues that her testimony is not credible when her medical records do not contain any mention of her having reported the accident to her physicians for several months and she filled out an intake form at one doctor's office indicating that her injury occurred months before and was "pre-existing/work has made it worse." Even if this Court were to assume that claimant's testimony, alone, is insufficient to support the Commission's finding that the accident occurred around December 1, 2014—because she made contradictory statements on a medical intake form and her medical records lack any reference to the accident for several months—claimant's testimony is not the only evidence in support of the Commission's finding.

Reese is distinguishable from the case at bar. In Reese, the claimant's supervisor contradicted the claimant's testimony on the disputed issue. Nothing else in the record, except

the claimant's testimony supported the Commission's finding. Id. ("Absent claimant's testimony, no evidence established that the duties of the ward clerk job, as amended, fell outside of claimant's residual capacity.").

In the instant case, claimant's supervisor testified that she recalled claimant informing her of the accident soon after it occurred. Even though neither claimant nor the supervisor can remember exactly when claimant's accident occurred, their testimony—together—is sufficient evidence that it occurred. Credible evidence, therefore, satisfies each of the legal standards and the Commission's finding of an injury by accident is upheld.

## C. Causation

Employer argues that the Commission erred in finding claimant's injury was caused by her fall at work. Specifically, it argues that none of the medical evidence, other than Dr. Laurent's report, establishes causation and that the Commission erred in relying on Dr. Laurent's report because he based his conclusion on a misunderstanding of the medical records and incorrect medical history received from claimant. This Court disagrees.

"A determination by the Commission upon conflicting facts as to causal relationship is conclusive and binding on appeal, absent fraud, when such finding is supported by competent, credible evidence." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101 (1983). "Likewise, the Commission's conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Id. "Causation is usually proven by medical evidence." Clinch Valley Med. Ctr. v. Hayes, 34 Va. App. 183, 192 (2000). "Though not necessarily conclusive, 'the opinion of the treating physician is entitled to great weight.'" Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 753 n.4 (2004) (quoting H.J. Holz & Son, Inc. v. Dumas-Thayer, 37 Va. App. 645, 655 (2002)).

Nevertheless, "[a] finding of causation need not be based exclusively on medical evidence." Lee Cty. Sch. Bd. v. Miller, 38 Va. App. 253, 260 (2002). "The testimony of a claimant may also be considered in determining causation, especially where the medical testimony is inconclusive." Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176 (1996). "In addition, the commission may rely upon circumstantial evidence in finding that an injury was caused by a particular accident." Marriott Int'l, Inc. v. Carter, 34 Va. App. 209, 215 (2001).

Here, the evidence supports the Commission's finding that claimant's fall caused her back injury. First, claimant testified about how the pain began after the accident. Although she acknowledged she had indicated on the December 8, 2014 intake form that she believed the injury was "pre-existing/work has made it worse," she explained that she wrote those words because she thought it was a problem with her pre-existing hip injury. Second, Dr. Laurent confirmed that a back injury like claimant suffered will often masquerade as a hip injury and that her initial reports of the hip injury exacerbation were consistent with the back injury occurring in the fall. He specifically attributed the back injury to claimant's fall.

Employer claims that Dr. Laurent's opinion, despite being the opinion of a treating physician that is normally accorded greater weight, cannot support the Commission's causation finding. Relying on Sneed v. Morengo, Inc., 19 Va. App. 199, 205 (1994), employer argues that the Commission was required to "refuse . . . to attribute any weight" to his opinion because his causation opinion is based on inaccurate medical history. Employer's reliance on Sneed is misplaced. In Sneed, the Commission rejected opinions of doctors who attributed the employee's injuries to his work accident when those doctors were completely unaware of the employee's extensive medical history involving similar issues. This Court affirmed, concluding that "[w]henever a physician's diagnosis flows from an assumption that rests upon a faulty premise,

such as misinformation provided by a claimant, the commission may refuse, and often will be required to refuse, to attribute any weight to that opinion." Id.

In the instant case, however, the Commission found that any inaccuracies in the medical history Dr. Laurent relied on were not significant enough to undermine his conclusion.[3] The evidence supports his conclusion on causation and therefore the conclusion is binding on this Court. See Clinch Valley Med. Ctr., 34 Va. App. at 193 ("The commission resolves conflicts in the medical evidence, and its decision when based upon credible evidence is binding on this Court.").

### D. Continuing Disability

Finally, employer argues that—even if the evidence establishes claimant is entitled to some compensation—the Commission erred in awarding continuing disability benefits because the evidence does not establish that claimant is permanently disabled. This Court disagrees.

"There is no presumption in the law that once a disability has been established, a claimant will be assumed to remain disabled for an indefinite period of time." Marshall Erdman & Assocs., Inc. v. Loehr, 24 Va. App. 670, 679 (1997). "[A] party seeking [workers'] compensation bears the burden of proving his disability and the periods of that disability."

---

[3] Employer identifies three inconsistencies in records Dr. Laurent relied on. First, employer claims Dr. Campbell's note that the injury happened "around 11/2014" is inconsistent with claimant's story. A record that the accident occurred in November of 2014 is a minor inconsistency given that claimant stated that it occurred within a few days of December 1, 2014.

Second, employer argues that on December 8, 2014, claimant initially reported that her injury was "months ago it just keeps getting worse" and that it was "pre-existing/work has made it worse." Nevertheless, Dr. Laurent opined claimant's initial belief that her injury was related to her pre-existing hip injury was a not uncommon misunderstanding for injuries of the type claimant actually suffered.

Third, employer argues claimant later reported the accident date as "Dec. 1 ? 2015." Dr. Laurent concluded she meant December 1, 2014. That conclusion was consistent with the next line of the same form, filled out in February of 2016, where she stated her symptoms had been present for a "little over 1 year."

Hoffman, 50 Va. App. at 216 (quoting Loehr, 24 Va. App. at 679). Nevertheless, the Commission's conclusion that a claimant has a "a continuing disability is . . . also a question of fact." Id. "[F]indings of fact of the Workers' Compensation Commission are conclusive on appeal, provided they are supported by credible evidence." Loehr, 24 Va. App. at 679.

The contrast between this case and Hoffman and Loehr explains why the Commission did not err in finding claimant suffers from a continuing disability.

In Hoffman, this Court reversed an award based on a continuing disability when the only evidence of a continuing disability was a note from a doctor "that read: '[n]o work until condition resolves (may be permanent).'" The employee had suffered respiratory problems from breathing dust on the job. He was treated for approximately two months, and the note was not written until nine months after his last examination and several months before the hearing before the deputy commissioner. Hoffman, 50 Va. App. at 217.

Similarly, in Loehr, this Court affirmed the denial of continuing disability benefits when the only evidence of continuing disability was a letter from the employee's doctor restricting the employee to light duty that also stated the doctor would "progress [the employee] to full duties," as he "improved." The letter was written ten months before the hearing before the deputy commissioner and did not "indicate the last occasion upon which [the employee] had been treated, how long the partial disability was expected to continue, or when, if ever, [the employee] would receive additional medical evaluation." 24 Va. App. at 680.

Unlike Hoffman and Loehr, in this case the evidence supports the Commission's conclusion that claimant's disability was ongoing. First, on June 1, 2016, Dr. Laurent checked a box that stated "no work at this time," but also wrote "patient will not be returning to work." Moreover, on November 30, 2016, although Dr. Laurent referred claimant to a physical therapist to see if she could move beyond a need for a walker, Dr. Laurent also specifically opined that it

was "likely" claimant would have "a level of permanent disability." He also noted that she had not had any "significant neurologic gain" since he last saw her. In Loehr, there was an implicit assertion the employee would recover, and, in Hoffman, the doctor stated a mere possibility of a permanent injury. Here, in contrast, Dr. Laurent specifically stated that permanent disability was likely.

Although Dr. Laurent's opinions were older than those in Hoffman and Loehr at the time of the hearing, his opinions remain probative and sufficient. Unlike Hoffman and Loehr, later medical records demonstrate a continuation of the same symptoms, despite the fact that Dr. Laurent had not specifically restated his opinion about the permanence of claimant's disability. Nine months after stating he expected a "level of permanent disability," he noted that claimant had merely been "stable" over the "past 6 months or so." He also noted she still used a walker for ambulation. Moreover, nearly a year later and only a few days before the hearing before the deputy commissioner, Dr. Gershon noted that Dr. Laurent's "no duty" restriction still existed. Given that claimant underwent treatment for nearly two years after surgery and the extended period over which claimant had shown no improvement,[4] the Commission could reasonably infer that claimant's then present level of disability was the "level of permanent disability" that Dr. Laurent opined was "likely." Thus, the Commission did not err in awarding continuing disability benefits.

## IV. CONCLUSION

Each of the challenged findings by the Commission is supported by credible evidence. Claimant's and her supervisor's testimony is sufficient to establish both that the accident

---

[4] Significantly, part of claimant's disability is her need of a walker for ambulation. Although the record is silent as to whether a walker was used by claimant at the hearing, employer conceded at oral argument that claimant was still using the walker at the June 4, 2018 hearing before the deputy commissioner. This is further evidence demonstrating the continuing nature of her disability.

occurred and that claimant timely provided notice of it to employer. Further, although there are some inaccuracies in the medical history Dr. Laurent relied on in opining that the accident caused claimant's injury, none of the inconsistencies are significant enough to undermine his ultimate conclusion. Finally, Dr. Laurent's opinion that claimant was "likely" to suffer "a level of permanent disability" was sufficient to support the Commission's award of continuing total temporary disability benefits when all the medical evidence since the opinion was consistent with the underlying conclusion. Accordingly, this Court affirms.

<u>Affirmed.</u>